*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ENNIS ATA BERKER, PH.D.

BUREAU OF PROFESSIONAL LICENSING,

Petitioner-Appellee,

UNPUBLISHED
August 29, 2024

v

No. 366922
LARA Bureau of Professional
Licensing
LC No. 22-004468

ENNIS ATA BERKER, PH.D.,

Respondent-Appellant.

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Respondent appeals by right the final order of the Board of Psychology Disciplinary Subcommittee (DSC) finding that responded violated the Public Health Code, MCL 333.1101 *et seq*., and sanctioning respondent with six months of probation, a requirement to complete continuing education, and a $3,000 fine. We affirm.

## I. BACKGROUND

The facts of this case are undisputed. Respondent is a psychologist, and he performed a comprehensive neuropsychological assessment for KH, who had recently been in an automobile accident, in February 2018. During this assessment, KH provided a deep and thorough history of her mental and physical health. In March 2018, respondent sent a report to KH's physician indicating that she suffered from a traumatic brain injury, post-concussive syndrome, cognitive impairment, and multiple mental-health related disorders. Respondent recommended supportive therapy, medications, and a re-evaluation in 6 to 12 months. About a week after completing his report, respondent obtained KH's personal cell phone number from her patient records and asked her out to dinner. Their relationship became romantic in June 2018, KH moved in with respondent in August 2018, and they began a sexual relationship in November 2018. Due to this conflict of interest, KH saw a different psychologist for her re-evaluations. KH told this psychologist about

-1-

her relationship with respondent, and he ultimately filed a complaint against respondent with the Department of Licensing and Regulatory Affairs (LARA). The Bureau of Professional Licensing (BPL), while investigating the complaint, retained Dr. Stephen Fabik, Ed.D., who opined that respondent "fail[ed] to exercise due care given how vulnerable this patient seemed to be" and that respondent's conduct "did not conform to minimal professional standards for a psychologist with his examinee." Following a contested hearing, the DSC found that respondent violated MCL 333.16221(a) (breach of general duty) and (b)(*i*) (incompetence).

This appeal followed.

## II.  DISCUSSION

Respondent's sole contention on appeal is that the trial court erred by analyzing its factual findings against the American Psychological Association's (APA) code of ethics instead of a then-effective Michigan regulation. We disagree.

Review of administrative disciplinary action is governed by Const 1963, art 6, § 28, which provides, in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

" 'Substantial evidence' means evidence that a reasonable person would find acceptably sufficient to support a conclusion. This may be substantially less than a preponderance of evidence, but does require more than a scintilla of evidence." *In re Sangster*, 340 Mich App 60, 67; 985 NW2d 245 (2022) (citation omitted). This Court will not substitute its judgment for that of the ALJ nor will it second guess assessments of credibility. *Id*. at 67.

A licensee may be subject to sanctions if the applicable disciplinary subcommittee finds at least one of the grounds for discipline articulated in Section 16221 of the Public Health Code has been established. As relevant to this appeal, Section 16221 provides:

> The disciplinary subcommittee shall proceed . . . if it finds that 1 or more of the following grounds exist:
>
> (a) Except as otherwise specifically provided in this section, a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.
>
> (b) Personal disqualifications, consisting of 1 or more of the following:

(*i*) Incompetence. [MCL 333.16221.]

" 'Incompetence' means a departure from, or failure to conform to, minimal standards of acceptable and prevailing practice for a health profession, whether or not actual injury to an individual occurs." MCL 333.16106(1).

The ALJ assessed whether respondent breached his general duties to KH and whether he failed to conform to the minimal standards for psychologists with reference to section 3.05 of the APA code of ethics, which provides in relevant part:

A multiple relationship occurs when a psychologist is in a professional role with a person and (1) at the same time is in another role with the same person, (2) at the same time is in a relationship with a person closely associated with or related to the person with whom the psychologist has the professional relationship, or (3) promises to enter into another relationship in the future with the person or a person closely associated with or related to the person.

A psychologist refrains from entering into a multiple relationship if the multiple relationship could reasonably be expected to impair the psychologist's objectivity, competence, or effectiveness in performing his or her functions as a psychologist, or otherwise risks exploitation or harm to the person with whom the professional relationship exists.

Multiple relationships that would not reasonably be expected to cause impairment or risk exploitation or harm are not unethical.

On appeal, respondent argues that the ALJ's reliance on the APA code of ethics was an error that warrants reversal. Respondent contends that the ALJ should have relied on Mich Admin Code, R 338.2527, which, among other prohibitions, barred (1) sexual relationships with current patients and (2) multiple relationships with current and former patients "when there is a reasonable risk of harm or exploitation to the patient or former patient." Respondent argues that because the relationship did not become sexual in nature until after KH was no longer a patient, the ALJ needed to make the additional finding that there was "a reasonable risk of harm or exploitation to" KH. Rule 338.2527 has since been repealed, but it was in effect when the ALJ's decision was made.

Respondent's argument fails on multiple fronts. First, respondent seems to suggest that Rule 338.2527 was meant to exclusively govern situations involving multiple relationships by psychologists. However, the administrative complaint was made pursuant to Section 16221 of the Public Health Code, and respondent has cited no authority suggesting that Rule 338.2527 *must* be applied when assessing whether there was a violation of Section 16221. Put differently, respondent suggests that the ALJ could not permissibly find that a multiple relationship violated Section 16221 without also finding that it violated Rule 338.2527. The total absence of authority supporting this suggestion renders it meritless. Petitioner's expert witness testified that section 3.05 of the APA's code of ethics was an appropriate tool for assessing respondent's conduct, and the ALJ agreed; we can discern no reason to conclude that the ALJ's agreement with this testimony was erroneous. Second, the ALJ expressly found that KH's "longstanding medical problems, multiple head injuries, previous hospitalization, as well as possible ongoing legal issues related to

her car accident, all made her particularly vulnerable." While it seems as though respondent did not exploit KH's vulnerabilities, the ALJ's findings make abundantly clear that the ALJ concluded that there was a reasonable risk that KH would be harmed or exploited due to her relationship with respondent. Therefore, any error would have been harmless.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michelle M. Rick